[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14581
_____

D.C. Docket No. 5:11-cv-02206-AKK

STAR DISCOUNT PHARMACY, INC., an
Alabama Corporation, PROPST DISCOUNT
DRUGS, INC., an Alabama Corporation, et al.,

                                                        Plaintiffs-Appellants,

versus

MEDIMPACT HEALTHCARE SYSTEMS, INC.,
a California Corporation, MICHAEL STRUHS,
an individual, et al.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 11, 2015)

Before TJOFLAT, ANDERSON, and SENTELLE,* Circuit Judges.

_____

*      Honorable David Bryan Sentelle, United States Circuit Judge for the District of Columbia
Circuit, sitting by designation.

PER CURIAM:

We have had the benefit of oral argument, and have carefully reviewed the briefs and the relevant parts of the record. We affirm the district court's grant of summary judgment dismissing plaintiffs' monopolization claim pursuant to Section 2 of the Sherman Act, 15 U.S.C. §2.[1] We conclude that the judgment of the district court should be affirmed for the numerous reasons fully explored at oral argument, some of which are discussed also herein.

Initially, we cannot disagree with the district court, which concluded that plaintiffs had failed to adduce genuine issues of material fact with respect to the crucial prerequisite of harm to competition in general, as opposed to harm to a particular competitor. In the district court, the only even arguably specific evidence of harm to competition in general was belatedly submitted to the district court in the form of a report by Dr. Simpson. The report was submitted after all the briefing was completed in the district court. Moreover, the plaintiffs indicated that Dr. Simpson's report was unnecessary. Doc. No. 132 at 3 ("Plaintiffs sought to supplement their response for a limited purpose. Namely, to address issues unraised by Defendants and unnecessary to Defendants' summary judgment motion but for which the Court may have additional questions and which further

_____

[1] The district court remanded several of plaintiffs' state law claims. The plaintiffs' other claims that the district court rejected on the merits have been expressly abandoned by plaintiffs, leaving only plaintiffs' Section 2 monopolization claim before us.

2

elaborate on Defendants' plan and its impact.").  Thus, with no guidance at all to the district court with respect to the significance of any aspect of the report, the district court concluded that plaintiffs had adduced no evidence of harm to competition among pharmacy providers, either in Dr. Simpson's report or elsewhere in the record.  We cannot conclude that the district court erred. "Neither the district court nor this Court has an obligation to parse the summary judgment record to search out facts or evidence not brought to the court's attention." Atlanta Gas Light Co. v. UGI Utilities, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006).  Moreover, even on appeal, plaintiffs have pointed to insufficient evidence of harm to competition generally.   Even if we consider the evidence provided by Dr. Simpson, plaintiffs' initial brief points to only three ways that Dr. Simpson indicated there was harm to competition.  First, Dr. Simpson indicated that an excluded pharmacy can no longer compete for the business of the defendants' enrollees.  However, the summary judgment record indicates that only plaintiffs' pharmacies have declined to join defendant's network of providers, virtually all others having eventually joined.  Thus, this indication of harm is harm only to a single competitor (i.e., plaintiffs) and not harm to competition in general amongst pharmacies.

Second, plaintiff points to Dr. Simpson's opinion that the defendant's lower reimbursement rate reduces the profit that a pharmacy obtains from serving an

3

additional customer, which profit incentivizes pharmacies to provide better point-of-sale services.   We agree with the district court that this is merely unsupported speculation.

Finally, plaintiffs point to Dr. Simpson's opinion that lower reimbursement rates and reduced profit can jeopardize a pharmacy's long-term viability and diminish the ability of pharmacies to expand.  We conclude that this too is mere speculation. Indeed, the record would seem to be to the contrary.  There is virtually no evidence of pharmacies closing because of defendant's reimbursement rates, notwithstanding the fact that there are a significant number of pharmacies which have agreed to the reimbursement rates and joined the defendant's network of providers.

Thus, we agree with the ground upon which the district court granted summary judgment.  We proceed below to mention other grounds which would, separately and independently, provide a basis for affirming the judgment of the district court.  One such ground is that plaintiffs' initial brief on appeal contains only conclusory assertions with respect to the prerequisites for proving a monopolization claim.

Plaintiffs' initial brief on appeal asserts only in conclusory fashion that defendants possessed monopoly power (or because this case involves the market power of a purchaser, monopsony power).  This crucial element is asserted only in

a few conclusory sentences, with no factual support provided.   Even plaintiffs' reply brief suggests that plaintiffs demonstrated monopsony power only by adducing direct evidence of actual anti-competitive effects, coupled with their legal argument that monopoly power can be demonstrated by actual, sustained adverse effects on competition even in the absence of an elaborate market analysis. We can assume arguendo, without deciding, plaintiffs' legal argument.  However, plaintiffs' reply brief has pointed to no evidence of actual, sustained adverse effects on competition.  The only such "direct evidence" of monopsony power to which the reply brief points is the fact that defendant was able to negotiate a lower price (a lower reimbursement rate) with the pharmacies which did join its network of providers.  However, plaintiffs cite no case, and our research has uncovered no case, which holds that a single purchaser's ability to negotiate a lower price with a number of sellers does, by itself, demonstrate monopsony power. Indeed, common sense and common experience make it clear that the ability of a single purchaser to negotiate a lower sales price does not, by itself, constitute monopsony power. Moreover, it is clear that the instant defendant does not have monopsony power.  It controls a mere five percent of the purchases in the market.  The plaintiffs, and all other pharmacies which are not in defendant's network of providers, have the remaining ninety-five percent of the available purchases in the market, and plaintiffs are free to join networks of providers competing with the defendant.

5

Thus, plaintiffs can compete not only for that ninety-five percent, but also, through other networks' competition with defendant, plaintiffs can compete even for the five percent of purchasers represented by the defendant. This lack of monopsony power is a sufficient ground in and of itself to affirm the judgment of the district court.

III.

For the foregoing reasons,[2] and for other reasons fully explored at oral argument, the judgment of the district court is

AFFIRMED.

---

[2] We need not address plaintiffs' argument that defendant's actions violate two Alabama statutes. Even if plaintiffs were correct in that regard, a violation of a state statute does not indicate a violation of federal antitrust law. Spanish Broad. Sys. v. Clear Channel, 376 F.3d 1065, 1076, 1076 n.8 (11th Cir. 2004).